UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COMFORT LINE PRODUCTS, INC.,
a Florida corporation

        Plaintiff,

v.                                 Case No: 2:17-cv-198-FtM-99CM

OCEANTIS LLC and MICHAEL
SHAWN O'BRIEN, as Curator of
Estate of Michael J.P. O'Brien,

        Defendants.
_____/

## **OPINION AND ORDER**[1]

Pending before the Court is the Motion to Dismiss filed by Defendant Michael Shawn O'Brien, as Curator of the Estate of Michael J.P. O'Brien ("Estate"). (Doc. 10). Plaintiff Comfort Line Products, Inc. has filed an opposition (Doc. 14), to which the Estate has filed a reply (Doc. 26). For the following reasons, the Court grants the Estate's motion.

## **BACKGROUND**

This is a patent infringement action. (Doc. 1). Michael J.P. O'Brien ("Decedent") worked for Comfort Line for fourteen years. While employed there, Decedent invented a

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

collapsible spa unit that he patented. He assigned and transferred his interest in the patent to Comfort Line. Because of the patent, Comfort Line has manufactured, sold, marketed, and distributed a collapsible spa unit called "SPA-N-A-BOX." Decedent eventually left Comfort Line to start his own company, Oceantis LLC, of which he was the principal and sole owner.

Comfort Line authorized Oceantis and Decedent to re-sell its SPA-N-A-BOX and provide customer service and repairs for the product. But Comfort Line did not authorize Defendants to manufacture and sell their own version of the patented spa units. But that is what Defendants allegedly did. According to Comfort Line, Defendants "used SPA-N-A-Box parts obtained from [it] and/or substantially identical parts to manufacture and sell [infringing] collapsible spa units." (Doc. 1 at ¶ 19). Comfort Line thus sues Oceantis and Decedent's Estate for patent infringement under 35 U.S.C. § 271.

## DISCUSSION

The Estate moves to dismiss this case against it because the Complaint does not allege that Comfort Line has made a claim against the Estate in Florida probate court, which is a condition precedent to suit. (Doc. 10). Comfort Line disagrees. It argues that federal courts have exclusive jurisdiction over patent infringement claims, and thus federal patent law preempts Florida probate requirements on making a claim against an estate. (Doc. 14 at 2).

The Court's starting point is Federal Rule of Civil Procedure 17(b), which governs an individual's capacity to be sued in federal court. Under this rule, Florida law will control an estate's capacity to be sued. *See* Fed. R. Civ. P. 17(b) (stating the capacity to be sued is determined "for all other parties, by the law of the state where the court is

located"). Rule 17 brings the Court to Florida's probate code. Section 733.702 provides that no cause of action against a decedent will survive his death unless a claim is presented against his estate within specified periods. See Fla. Stat. § 733.702(2). And a claim not timely filed is barred unless extended by the probate court. See Fla. Stat. § 733.702(3). Because Florida's probate law controls Comfort Line's ability to sue the Estate, the Court must decide whether federal patent law preempts the state law. Answering this question will determine whether Comfort Line had to make a claim in probate court before filing this suit, as the Estate now alleges.

The United States Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times" the exclusive right of inventors to their discoveries. U.S. Const. art. I, § 8, cl. 8. Under this authority, Congress passed the Patent Act, 35 U.S.C. §§ 1-376. It provides that federal courts have exclusive jurisdiction over cases arising under the Patent Act. See 28 U.S.C. § 1338(a) (stating, "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents").

Under the Constitution's Supremacy Clause, federal law may preempt state law by three methods: explicit preemption, field preemption, and conflict preemption. See Cal. Fed. Sav. and Loan Ass'n v. Guerra, 479 U.S. 272, 280-81 (1987). The preemption analysis is a question of congressional intent. Id. at 280. Explicit preemption exists when Congress preempts state law by stating so in express terms. Field preemption applies where Congress has enacted a scheme of federal regulation so comprehensive "to make reasonable the inference that Congress 'left no room' for supplementary state regulation." Id. at 280-81 (citation omitted); see also Hunter Douglas v. Harmonic Design, Inc., 153

3

F.3d 1318, 1333 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356 (Fed. Cir. 1999). Neither of these bases for preemption exists here, nor do the parties argue they apply. This leaves conflict preemption.

Conflict preemption exists to the extent that a federal and state law conflict. "Such a conflict occurs either because 'compliance with both federal and state regulations is a physical impossibility,' . . . or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objections of Congress" in executing a statute. *Guerra*, 479 U.S. at 281 (citations omitted); *see also Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998). A court "must ask two questions in determining whether a state law conflicts with federal law: (1) is it possible to comply with both laws, and, (2) does the state law stand as an obstacle to the intent of Congress?" *Witco Corp. v. Beekhuis*, 38 F.3d 682, 689 (3d Cir. 1994) (citing *Guerra*, 479 U.S. at 281).

Before answering these questions here, it is important to note that federal preemption of state law is disfavored, especially in areas of law that states traditionally occupy. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (stating where "the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest" (internal quotations and citations omitted)). Indeed, for preemption to occur in an area states traditionally dominate, "there must be a sharp conflict between the state law and federal policy." *Witco*, 38 F.3d at 688 (citation omitted). Because "probate matters traditionally have been nearly the exclusive concern of the states, there is a presumption against preemption of state law." *Id.* at 688.

With that in mind, the Court turns to the two questions on preemption. In doing so, the Court finds *Witco Corp. v. Beekhuis*, 38 F.3d 682 (3d Cir. 1994) to be instructive. In that case, Witco sued an estate's executrix, among others, to recoup costs associated with an environmental cleanup of land owned by decedent's company. The pertinent issue on appeal was whether the three-year statute of limitations for a claim under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA") preempted Delaware's statutes requiring notice to a decedent's estate before filing suit. *Witco*, 38 F.3d at 684. The Third Circuit held that CERCLA did not preempt the state statutes. *Id.*

The Third Circuit examined the two questions for determining conflict preemption. It found that Witco could comply with both the federal and state statutes because "[o]ne can notify an estate of a contingent claim [under CERCLA] within eight months of a decedent's death, and also file a contribution action within three years of the date of a judgment for response costs." *Id.* at 688. The court also found, "[i]n light of the traditional reluctance of Congress to preempt state laws which are of significant importance to the states and traditionally within their province, we decline to read into the CERCLA statute the congressional intent to except CERCLA claims from state probate laws and procedures." *Id.* at 689. Although *Witco* is not binding precedent, the Court finds it analogous to this case and its reasoning compelling.

Here, federal patent law and Florida probate law do not stand it sharp conflict, as it is possible to comply with both statutes. For instance, Comfort Line could present a claim to the curator per Florida Statute § 733.02. If the curator objected to the claim, Comfort Line could sue the Estate in federal court for patent infringement. If Comfort Line

5

wins the infringement suit, the probate court will still determine how to divide the Estate's assets among valid creditors. At no point does the filing of a statement of claim impede on federal court's patent jurisdiction under § 1338(a) and Fla. Stat. § 733.705.

Second, Florida Statute § 733.02 does not stand as an obstacle to congressional intent. Florida's interest in swiftly settling its citizens' estates is undeniably strong. And probate law has traditionally been within the states' province. *See Witco*, 38 F.3d at 689 ("Long-standing precedent recognizes that federal claims against decedents' estates are subject to state probate laws and procedures, unless federal law specifically provides otherwise." (citations omitted)). Nothing in the patent law suggests that Congress intended to preempt state laws governing claims against decedents' estates or to modify Florida's laws on the capacity to be sued. And Comfort Line has not presented any case law or arguments to persuade the Court otherwise.

In conclusion, the Estate correctly argues that the Complaint is devoid of any allegation that Comfort Line has satisfied the condition precedent of making a written claim in probate court. The Court thus grants the Estate's motion to dismiss.

Accordingly, it is now **ORDERED:**

(1) Defendant Michael Shawn O'Brien's Motion to Dismiss (Doc. 10) is **GRANTED**.

(2) Plaintiff Comfort Line Products, Inc. may file an amended complaint in accordance with this Order on or before **September 8, 2017**.

**DONE** and **ORDERED** in Fort Myers, Florida this 18th day of August, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record